1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RONALD B. MILLER, *et al.*,                                        No. C-12-2282 EMC

                    Plaintiffs,

         v.                                                        **ORDER GRANTING PLAINTIFFS'**
                                                                   **MOTION FOR PRELIMINARY**
WELLS FARGO BANK, *et al.*,                                        **INJUNCTION**

                    Defendants.
_____/

        Plaintiffs Ronald Brooks Miller and Usoalii Nikotemo Miller have filed a foreclosure-related

action against the following companies: Carrington Mortgage Services; Wells Fargo Bank NA, and

Atlantic & Pacific Foreclosure Services ("A&P"). Plaintiffs have asserted a number of claims for

relief, including but not limited to declaratory relief, quiet title, fraud, violation of RESPA, and

intentional infliction of emotional distress. Currently pending before the Court is Plaintiffs' motion

for a temporary restraining order, which this Court essentially converted into a motion for a

preliminary injunction at the last hearing. (At the least hearing, Defendants submitted proof that

they were delaying the foreclosure sale until June 1, 2012.) Plaintiffs are asking that the Court

enjoin Defendants from selling the real property at issue until after the case has been resolved on the

merits.

        Having considered the parties' briefs and accompanying submissions, as well as the oral

argument presented at the hearing on the motion, the Court hereby **GRANTS** Plaintiffs' motion,

conditioned upon the posting of a bond as described below.

United States District Court
For the Northern District of California

# I.   FACTUAL & PROCEDURAL BACKGROUND

In their complaint, Plaintiffs essentially allege that Defendants have no ownership of the deed of trust and/or promissory note.  More specifically, the main allegations in the complaint are as follows.

Plaintiffs took out a home loan from Fremont Investment & Loan ("Fremont") on or about March 1, 2006.  The loan was for $420,000.  *See* Compl. ¶ 19(c).  Mr. Miller signed the loan documents.  He was told not to date his signature.  He was not given any copies of the signed documents, even though he asked.  *See* Compl. ¶ 19(g)-(j).  On the same day, Mr. Miller also signed a deed of trust.  Once again, he was not given any copies of the signed document, even though he asked.  *See* Compl. ¶ 20.  At the time Mr. Miller signed the documents, he was not told about MERS; nor was he told that the loan might be securitized.  *See* Compl. ¶ 20(d).

Plaintiffs seem to suggest that the deed of trust that was eventually recorded in March 2006 differed from the deed of trust that he had signed.  *See* Compl. ¶ 22(e).  The deed of trust that was recorded included a provision that MERS was the beneficiary and that it would act solely as the nominee for Fremont and its successors and assigns.  *See* Defs.' RJN, Ex. A (deed of trust).  Although not entirely clear, Plaintiffs seem to suggest that the provision on MERS was not a part of the deed of trust he had signed.

On June 18, 2008, Fremont filed for Chapter 11 bankruptcy.  *See* Compl. ¶ 32.  On June 11, 2010, a new company – Signature – was formed in the bankruptcy case.  *See* Compl. ¶ 39.

According to Plaintiffs, Defendants claim that, on February 25, 2010 – *i.e.*, before Signature was formed – Fremont assigned the deed of trust (acting through its nominee MERS) to Wells Fargo (as trustee for the Carrington Mortgage Loan Trust).[1]  *See* Compl. ¶ 44.  However, the assignment document was fraudulent.  The document was actually signed by MERS in May 2011 – *i.e.*, *after* Fremont no longer existed – as reflected by the date on the notarization.  MERS intentionally backdated the document because it knew that it had to pick a date for the assignment while Fremont was still in existence.  *See* Compl. ¶ 44.

---

[1]  *See also* Defs.' RJN, Ex. 5 (assignment of deed of trust).

2

**United States District Court**
For the Northern District of California

1    Because there was in fact no effective assignment to Wells Fargo on February 25, 2010,

2    Plaintiffs contend the attempted substitution of trustee by Wells Fargo (as assignee) was also

3    ineffective.[2]  The substitution-of-trustee document was also fraudulent in that it was backdated –

4    listing the date of substitution as February 26, 2010 (*i.e.*, the day after the assignment), even though

5    the notarization date shows that it was actually signed in May 2011.  *See* Compl. ¶¶ 49-51.

6         Because the substitution was ineffective, the "substituted" trustee – A&P – lacked the

7    authority to issue the notice of default in March 2010 and the notice of trustee's sale in May 2011.[3]

8    *See* Compl. ¶¶ 38, 52.  Plaintiffs also assert that the notice of default was fraudulent in that it was

9    signed by a person (D. Guajardo) who is not in fact an employee of LSI Title Company.  LSI was

10   purporting to act as A&P's agent in issuing the notice.  *See* Compl. ¶ 38.

11        According to Plaintiffs, there is no evidence that Signature (after Fremont went out of

12   existence) ever assigned the note and deed of trust to Wells Fargo.  *See* Compl. ¶ 47.  Plaintiffs also

13   suggest that Signature has disavowed any interest in the note and deed of trust at issue.  *See* Compl.

14   ¶ 13.

15                          **II.   DISCUSSION**

16   A.    Legal Standard

17        "'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on

18   the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

19   balance of equities tips in his favor, and that an injunction is in the public interest.'"  *Network*

20   *Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 11, 1144 (9th Cir. 2011) (quoting *Winter v.*

21   *Natural Res. Defense Council, Inc.*, 555 U.S. 7 (2008)).  The Ninth Circuit has held that

22              the "serious questions" approach survives Winter when
              applied as part of the four-element Winter test.  In other
23            words, "serious questions going to the merits" and a
              hardship balance that tips sharply toward the plaintiff
24            can support issuance of an injunction, assuming the
              other two elements of the *Winter* test are also met.

25

26

27        [2] *See also* Defs.' RJN, Ex. 5 (notice of substitution of trustee).

28        [3] *See also* Defs.' RJN, Exs. 7-8 (notices of default and trustee's sale).

1 | *Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

2 |        1.       <u>Likelihood of Success on the Merits/Serious Questions Going to the Merits</u>

3 |        In their opposition brief, Defendants make arguments on the likelihood of success of each

4 | claim asserted in the complaint.  The Court, however, need not evaluate each individual cause of

5 | action given that Plaintiffs are asking at this juncture only for an injunction barring the foreclosure

6 | from proceeding.

7 |        Although Plaintiffs make various challenges to the foreclosure-related documents, the critical

8 | challenge is their contention that the assignment of the deed of trust was fraudulent.  This contention

9 | has several components: (1) Mr. Miller signed a deed of trust that did not mention MERS in any

10 | way; (2) even if the deed of trust had a provision on MERS, MERS lacked authority to make the

11 | assignment; and (3) MERS actually made the assignment on Fremont's behalf *after* Fremont was no

12 | longer in existence (*i.e.*, in May 2011) but backdated the assignment document to a date when

13 | Fremont was still in existence.  For purposes of this opinion, the Court need only address the last

14 | component, *i.e.*, the backdating of the assignment.

15 |        The Court finds that Plaintiffs have established at the very least serious questions going to

16 | the merits.  As noted above, the assignment document was signed by MERS, acting on behalf of

17 | Fremont. *See* Def.'s RJN, Ex. 5 (assignment of deed of trust).  However, it appears that the

18 | assignment document was actually signed in May 2011 – at least, that is what is reflected in the

19 | notarization.  As of May 2011, it appears that Fremont was no longer in existence.  Thus, Plaintiffs

20 | fairly argue that MERS could not really have been acting on Fremont's behalf at the time of the

21 | assignment.

22 |        Notably, in their opposition brief, Defendants fail to address this specific problem.  They

23 | simply argue that the assignment was "executed before Fremont . . . merged into Signature Group

24 | Holdings, Inc." Opp'n at 8.  While the assignment was dated February 25, 2010, Defendants fail to

25 | account for the notarization date of May 2011.  Moreover, marks on the copy of the assignment filed

26 | with the Court suggests the date might have been altered.

27

28

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1    As a back-up argument, Defendants assert that, even if there were a problem, "Plaintiffs . . .

2  do not allege any prejudice to them arising from the alleged technical defects in the Assignment."

3  Opp'n at 8.  To the extent Defendants are pointing to the fact that Plaintiffs are in default, that may

4  well be true – *i.e.*, they may owe money to someone – but that does not mean that Plaintiffs have not

5  suffered any prejudice as a result of a defect in the assignment.  If someone other than Defendants

6  has the true authority to foreclose, then, until that someone properly exercises that authority,

7  Plaintiffs can not be subject to a valid foreclosure.

8        2.    Irreparable Harm and Balance of Hardships

9        As to the next two factors, *i.e.*, irreparable harm and balance of hardships, the Court finds

10  that they also weigh in favor of Plaintiffs.  First, as many courts have recognized, "losing one's

11  home through foreclosure constitutes irreparable harm."  *Osorio v. Wells Fargo Bank*, No. C

12  12-02645 RS, 2012 U.S. Dist. LEXIS 72719, at *7 (N.D. Cal. May 24, 2012).  Defendants seem to

13  argue that there is no irreparable harm because Plaintiffs are in default and are more than likely

14  unable to tender the indebtedness owed; but, as noted above, this argument fails to take into account

15  that, if the debt is in fact owned by someone other than Defendants, then Defendants can not

16  foreclose.

17        Second, the balance of hardships tips sharply in Plaintiffs' favor.  At most, Defendants face

18  the prospect of monetary loss; that "does not outweigh the harm [P]laintiff[s] would suffer if [they]

19  lost [their] home, especially considering that any security [D]efendants have in [P]laintiff[s']

20  property will still remain"; that an injunction would only subject Defendants to "'a temporary delay

21  in earning income from their investment,'" *id.* at *8; and that the Court shall require Plaintiffs to

22  post security as a condition for issuance of a preliminary injunction.  *See* Fed. R. Civ. P. 65(c)

23  (providing that "[t]he court may issue a preliminary injunction or a temporary restraining order only

24  if the movant gives security in an amount that the court considers proper to pay the costs and

25  damages sustained by any party found to have been wrongfully enjoined or restrained").

26        3.    Public Interest

27        Finally, the public interest also weighs in favor of a preliminary injunction.  As noted above,

28  there are serious questions going to the merits, and thus Defendants' argument that "an injunction is

United States District Court

For the Northern District of California

1    not in the public interest [if] it encourages borrowers to file frivolous lawsuits in an effort to delay

2    foreclosures" has no merit.  Opp'n at 14.  Public policy also favors insuring the integrity and

3    propriety of foreclosure-related documents.

4        4.    Security

5        Taking into account the *Winter* factors, the Court concludes that a preliminary injunction

6    enjoining Defendants from foreclosing on the property pending a resolution of the case on the merits

7    is appropriate.  The preliminary injunction, however, shall be conditioned on Plaintiffs' posting of

8    security.  As noted above, under Federal Rule of Civil Procedure 65(c), a "court may issue a

9    preliminary injunction or a temporary restraining order only if the movant gives security in an

10   amount that the court considers proper to pay the costs and damages sustained by any party found to

11   have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).

12       In the instant case, the Court finds that the posting of security is a fair requirement.  The

13   harm from the delay in foreclosure occasioned by the preliminary injunction is the delay in obtaining

14   possession of the property.  Possession and use of the property may fairly be compensated by

15   payment of fair market rent.  At the hearing, the Court thus proposed that Plaintiffs be required to

16   post a monthly security equivalent to the fair rental value of the real property at issue.  Neither side

17   objected to this approach and, accordingly, the Court ordered the parties to provide evidence

18   regarding the fair rental value by May 31, 2012.  The Court shall make a final ruling on the monthly

19   security to be provided by Plaintiffs after receiving this evidence from the parties.

20                    **III.    CONCLUSION**

21       For the foregoing reasons, the Court hereby **GRANTS** Plaintiffs' request for a preliminary

22   injunction.  Defendants are enjoined from foreclosing on the real property at issue pending the

23   resolution of this case on the merits.  The preliminary injunction is in force as of May 29, 2012.

24   However, continuance of the preliminary injunction shall be conditioned upon Plaintiffs paying a

25   monthly security to the Clerk of Court, in an amount to be determined by the Court shortly hereafter.

26       The Court emphasizes that, in granting this preliminary relief to Plaintiffs, it is not

27   foreclosing Defendants from arguing that any problem with the chain of ownership is capable of

28

6

**United States District Court**

For the Northern District of California

1   being cured.  Nor is it foreclosing Defendants from arguing that, on the merits, there is in fact no

2   problem with the chain of ownership.

3         This order disposes of Docket No. 6.

4

5         IT IS SO ORDERED.

6

7   Dated:  May 30, 2012

8   _____
          EDWARD M. CHEN

9             United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28