UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD BROOKS MILLER, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>CARRINGTON MORTGAGE SERVICES, *et al.*,<br><br>    Defendants.<br>_____/ | No. C-12-2282 EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; DENYING PLAINTIFFS' MOTION FOR SANCTIONS; AND FINDING MOOT PLAINTIFFS' MOTION FOR LEAVE TO AMEND**<br><br>**(Docket No. 42, 49, 65)** |

    Plaintiffs Ronald Brooks Miller and Usoalii Nikotemo Miller have filed a foreclosure-related action against the following companies: Carrington Mortgage Services; Wells Fargo Bank NA, and Atlantic & Pacific Foreclosure Services ("A&P"). Plaintiffs have asserted a number of claims for relief in their first amended complaint ("FAC"), including but not limited to declaratory relief, quiet title, fraud, violation of the Real Estate Settlement Procedures Act ("RESPA"), defamation, and intentional infliction of emotional distress ("IIED"). Currently pending before the Court is (1) Defendants' motion to dismiss the FAC and (2) Plaintiffs' motion for sanctions.

    Having considered the parties' briefs and accompanying submissions, as well as the oral argument presented at the hearing, the Court hereby **GRANTS** in part and **DENIES** in part Defendants' motion to dismiss and **DENIES** Plaintiffs' motion for sanctions.[1]

---

[1] The Court takes note that Plaintiffs have filed a second opposition, or sur-reply, to Defendants' motion. Plaintiffs have asked the Court to consider the briefing even though it was filed after Defendants submitted their reply. Although the Court does not find persuasive Plaintiffs' explanation as to why the

# I. FACTUAL & PROCEDURAL BACKGROUND

In their complaint, Plaintiffs essentially allege that Defendants have no ownership of the deed of trust and/or promissory note. More specifically, the main allegations in the complaint are as follows.

Plaintiffs took out a home loan from Fremont Investment & Loan ("Fremont") on or about March 1, 2006. The loan was for $420,000. *See* FAC ¶ 19(c). Mr. Miller signed the loan documents. He was told not to date his signature. He was not given any copies of the signed documents, even though he asked. *See* FAC ¶ 19(g)-(j). On the same day, Mr. Miller also signed a deed of trust. Once again, he was not given any copies of the signed document, even though he asked. *See* FAC ¶ 20. At the time Mr. Miller signed the documents, he was not told about MERS; nor was he told that the loan might be securitized. *See* FAC ¶ 20(d); *see also* FAC ¶¶ 22(f), 84.

Plaintiffs seem to suggest that the deed of trust that was eventually recorded in March 2006 differed from the deed of trust that he had signed. *See* FAC ¶ 22(e). The deed of trust that was recorded included a provision that MERS was the beneficiary and that it would act solely as the nominee for Fremont and its successors and assigns.[1] *See* Defs.' RJN, Ex. A (deed of trust).

---

papers were not timely filed, it shall, in the interest of justice, consider them – particularly because they are not materially different from the arguments presented in their timely opposition. Plaintiffs are forewarned, however, that, in the future, they must conduct themselves in accordance with the federal and local rules; their pro se status does not immunize them from these requirements.

[1] In their "sur-reply," Plaintiffs claim that, under Ninth Circuit law, MERS's only role is to track the beneficiary; it is not the beneficiary itself. *See* Docket No. 61 ("Sur-Reply" at 11). But the case cited by Plaintiffs – *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034 (9th Cir. 2011) – does not so hold. While the Ninth Circuit does in *Cervantes* discuss tracking by MERS, it also discusses MERS's role as follows:

> At the origination of the loan, MERS is designated in the deed of trust as a nominee for the lender and the lender's "successors and assigns," and as the deed's "beneficiary" which holds legal title to the security interest conveyed. If the lender sells or assigns the beneficial interest in the loan to another MERS member, the change is recorded only in the MERS database, not in county records, because MERS continues to hold the deed on the new lender's behalf. If the beneficial interest in the loan is sold to a non-MERS member, the transfer of the deed from MERS to the new lender is recorded in county records and the loan is no longer tracked in the MERS system.

*Id.* at 1039.

2

1 Although not entirely clear, Plaintiffs seem to suggest that the provision on MERS was not a part of
2 the deed of trust he had signed.

3 On June 18, 2008, Fremont filed for Chapter 11 bankruptcy. *See* FAC ¶ 32. On June 11,
4 2010, a new company – Signature – was formed in the bankruptcy case. *See* FAC ¶¶ 39, 139.

5 According to Plaintiffs, Defendants claim that, on February 25, 2010 – *i.e.*, before Signature
6 was formed – Fremont assigned the deed of trust (acting through its nominee MERS) to Wells Fargo
7 (as trustee for the Carrington Mortgage Loan Trust).[2] *See* FAC ¶ 44. However, the assignment
8 document was fraudulent. The document was actually signed by MERS in May 2011 – *i.e.*, after
9 Fremont no longer existed – as reflected by the date on the notarization. MERS intentionally
10 backdated the document because it knew that it had to pick a date while Fremont was still in
11 existence. *See* FAC ¶ 44.

12 Because there was in fact no assignment to Wells Fargo on February 25, 2010, the attempted
13 substitution of trustee by Wells Fargo (as assignee) was also ineffective.[3] The substitution-of-trustee
14 document was also fraudulent in that it was backdated – listing the date of substitution as February
15 26, 2010 (*i.e.*, the day after the assignment), even though the notarization date shows that it was
16 actually signed in May 2011. *See* FAC ¶¶ 49-51.

17 Because the substitution was ineffective, the "substituted" trustee – A&P – lacked the
18 authority to issue the notice of default in March 2010 and the notice of trustee's sale in May 2011.[4]
19 *See* FAC ¶¶ 38, 52. Plaintiffs also assert that the notice of default was fraudulent in that it was
20 signed by a person (D. Guajardo) who is not in fact an employee of LSI Title Company. LSI was
21 purporting to act as A&P's agent in issuing the notice. *See* FAC ¶ 38.

22 According to Plaintiffs, there is no evidence that Signature (after Fremont went out of
23 existence) ever assigned the note and deed of trust to Wells Fargo. *See* FAC ¶ 47. Plaintiffs also
24 suggest that Signature has disavowed any interest in the note and deed of trust at issue. *See* FAC ¶

---

[2] *See also* Defs.' RJN, Ex. 5 (assignment of deed of trust).

[3] *See also* Defs.' RJN, Ex. 6 (notice of substitution of trustee).

[4] *See also* Defs.' RJN, Exs. 7-8 (notices of default and trustee's sale).

13. Plaintiffs further maintain that parties other than Defendants have claimed ownership of the loan – in particular, Citibank and BAC. *See* FAC ¶ 113. Finally, Plaintiffs suggest that they do not have any outstanding loan to pay because the loan was paid by insurance or federal bail-out programs. *See* Docket No. 61 ("Sur-Reply" at 16).

Based on, *inter alia*, the above allegations, Plaintiffs have asserted the following claims.

(1) Temporary injunction. Although the first cause of action is titled "temporary injunction," it basically is a claim for wrongful foreclosure. Plaintiffs assert wrongful foreclosure on the grounds that Defendants have no authority to foreclose on the real property at issue because the assignment of deed of trust and related documents are fraudulent.

(2) Declaratory relief. The claim for declaratory relief is essentially the same the first claim above – *i.e.*, basically, Plaintiffs seek a declaration that Defendants have no right to foreclose because they do not own the promissory note and/or deed of trust. Plaintiffs also suggest in this claim that MERS had no authority to act because its role in the loan process was concealed from them at the time that Mr. Miller signed the loan documents. *See* FAC ¶ 84. In addition, Plaintiffs suggest that the notice of trustee's sale was defective because it did not state the name of the beneficiary. *See* FAC ¶ 99.

(3) Quiet title. Presumably, this claim has the same factual predicate as the first two claims above.

(4) Fraud, intentional misrepresentation, fraudulent concealment, and negligent misrepresentation. In this claim, Plaintiffs assert that Defendants falsely represented ownership of the promissory note and/or deed of trust in the attempt to take Plaintiffs' home from them. As part of this attempt, Defendants even filed false documents with the bankruptcy courts overseeing Plaintiffs' bankruptcy proceedings. *See* FAC ¶ 107(a). For example, Defendants filed two different assignments of the deed of trust with the bankruptcy court. *See* FAC ¶ 107(b); *see also* FAC ¶ 126-31 (discussing different assignments of deed of trust). Defendants also filed different proofs of claim with the bankruptcy court.[5] *See* FAC ¶¶ 143-44, 149-50. Plaintiffs claim that the state of

---

[5] The different proofs of claim are attached as exhibits to Plaintiffs' motion for sanctions.

(1) The first proof of claim, filed in October 2007, identified Fremont as the creditor

California, the Alameda County recorder's office, and the bankruptcy courts all relied on the false representations of Defendants. *See* FAC ¶¶ 107(d), 160-62. Plaintiffs suggest that they even believed the false representations "for a time" – *e.g.*, "believing in 2008 and 2009 that Carrington might be the new lender, [they] filed four applications for HAMP mortgage modification application, all of which were rejected." FAC ¶¶ 107(d), 159. In addition to the above, Plaintiffs also seem to allege fraud because, starting in 2008, Carrington refused to identify who the owner of the loan was, *see* FAC ¶¶ 108, 110, and because the promissory note was not properly endorsed (either in form or on time). *See* FAC ¶ 117-24.

(5) Financial damages. This does not appear to be a cause of action per se. Rather, Plaintiffs ask to be awarded their lost wages because they had to "do[] the work of an attorney in order to protect [their] home which could also be considered to be the equivalent of Attorneys['] fees." FAC ¶ 171.

(6) Violation of RESPA. Plaintiffs claim that, starting in 2008, they asked Carrington for proof of ownership. While Carrington responded, its response was not in compliance with RESPA. After Plaintiffs' pointed out problems with the evidence supplied by Carrington, Carrington refused to provide further evidence to support the claim of ownership. *See* FAC ¶¶ 176-80. It appears that this claim is based on Carrington sending to Plaintiffs allegedly problematic assignments of the deed

---

($448,700). This was in conjunction with Plaintiffs' 2007 bankruptcy case. *See* Pls.' RJN, Ex. 1.

(2) The second proof of claim, filed in February 2008, identified Fremont as the creditor ($450,048.44). This was in conjunction with one of Plaintiffs' 2008 bankruptcy cases. *See* Pls.' RJN, Ex. 2.

(3) The third proof of claim, filed in September 2008, identified MERS/Fremont ("c/o" Carrington) as the creditor ($495,046.51). This was in conjunction with another one of Plaintiffs' 2008 bankruptcy cases. Carrington was identified as the party where notices should be sent. *See* Pls.' RJN, Ex. 3.

(4) The fourth proof of claim, filed in January 2009, identified MERS/Fremont and Carrington as the creditor ($515,426.57). This was in conjunction with the same 2008 bankruptcy case as in (3). Carrington was identified as the party where notices should be sent. *See* Pls.' RJN, Ex. 4.

(5) The fifth proof of claim, filed in July 2011, identified Carrington as the creditor ($412,217.13). This was in conjunction with Plaintiffs' 2011 bankruptcy case. *See* Pls.' RJN, Ex. 5.

(6) The sixth proof of claim, filed in August 2011, identified Wells Fargo (as the trustee) as the creditor ($413,066.63). This was in conjunction with Plaintiffs' 2011 bankruptcy case. *See* Pls.' RJN, Ex. 6.

1    of trust – problematic, *e.g.*, because the assignment document was not signed, dated, and/or
2    notarized or was not issued by Fremont. *See* FAC ¶¶ 40-44.

3           (7)     Civil conspiracy. Plaintiffs allege that Defendants conspired to fraudulently claim
4    ownership of the promissory note and/or deed of trust and put Plaintiffs' home into foreclosure. *See*
5    FAC ¶ 184. In this claim, Plaintiffs also suggest that MERS's role in assisting the assignment of
6    loan documents is problematic because it bypasses the county recorders' offices which make
7    documents available to the public. According to Plaintiffs, banks used MERS to shift their
8    ownership from "bad loans" to "good loans" and then shifted the" good loans" back to the "bad
9    loans" in order to take advantage of the federal bailout. *See* FAC ¶ 184(b)-(d).

10          (8)     Defamation. It is not clear whether this claim is asserted against Carrington only or
11   against all Defendants. In any event, Plaintiffs claim that, at the very least, Carrington "knowingly,
12   intentionally and without justification communicated false information to the credit reporting
13   bureaus." FAC ¶ 191.

14          (9)     IIED.[6] Plaintiffs allege that Defendants caused them emotional distress by repeatedly
15   threatening them with eviction from their home and by demanding that they pay money, even though
16   Defendants have no claim to Plaintiffs' home. *See* FAC ¶¶ 199-200.

### III.    DEFENDANTS' MOTION TO DISMISS

A.   Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir.

---

[6] In the FAC, Plaintiffs suggest that this claim is being brought pursuant to 42 U.S.C. § 1983. *See* FAC at 30. However, this appears to be an error as Plaintiffs do not appear to be alleging that any Defendant was acting under the color of state law.

2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.

B.   No Cause of Action

As a preliminary matter, the Court dismisses some of the claims asserted in Plaintiffs' complaint because, as a formal matter, there are no such causes of action. More specifically, the Court dismisses the claims for temporary injunction and financial damages because they are not causes of action but rather remedies. Similarly, the claim for civil conspiracy shall be dismissed because it is not a cause of action under California law. *See Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994) (stating that "[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration"). Dismissal of these claims will not prejudice Plaintiffs in any way. For example, dismissal of the claim for a temporary injunction is immaterial as the Court has already issued a preliminary injunction. Dismissal of the claim for financial damages will not bar Plaintiffs from asking for the relief should they prevail on any of their substantive claims (*e.g.*, for wrongful foreclosure or fraud).[7] Finally, dismissal of the civil conspiracy claim is not significant because the claim essentially contains allegations of fraud by Defendants but Plaintiffs already have an independent fraud claim in the FAC.

Accordingly, the Court shall dismiss with prejudice the following claims asserted in the FAC: temporary injunction, financial damages, and civil conspiracy.

///

---

[7] Of course, this does not mean that Plaintiffs would necessarily get their lost wages/"attorney's fees" if they were to prevail.

7

C.    Fraud

"[T]he required elements for claims for fraud [are]: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage." *In re Estate of Young*, 160 Cal. App. 4th 62, 79 (2008) (internal quotation marks omitted).

In the case at bar, Plaintiffs' main fraud claim is that Defendants made false representations that they owned the promissory note and/or deed of trust. The problem for Plaintiffs is that, even if Defendants made these false representations, they have not adequately pled that they relied on those representations to their detriment. To the extent Plaintiffs point to reliance by, *e.g.*, the state of California, the Alameda County recorder's office, or even the bankruptcy courts, such reliance is immaterial. Plaintiffs must establish that they themselves relied on the fraud. While Plaintiffs do state in the FAC that they believed the false representations "for a time," FAC ¶ 107(d), they have not shown that they were damaged as a result. For example, even if Plaintiffs believed in 2008 and 2009 that Carrington might be the new lender and thus filed four applications for loan modification with Carrington, all of which were rejected, *see* FAC ¶ 159, that does not establish that Plaintiffs were damaged. It does not appear, for instance, that, as a result of the delay, Plaintiffs were not able to file a loan modification application with the "true" lender. Nor does it appear that another company made attempts to foreclose while Plaintiffs were pursuing loan modification with Carrington.

Aside from reliance, Plaintiffs have also failed to make a case for knowledge of falsity. Even under Plaintiffs' version of the facts, it is plausible that Defendants do have ownership of the loan (at least Wells Fargo currently) but just tried to take short cuts to establish the chain of ownership (*e.g.*, by backdating the assignment of deed of trust so that Fremont would be making the assignment to Wells Fargo). That there may have been multiple defective assignments of trust does not mean that there was not an intent on the part of Fremont (or its successor Signature) to convey the deed of trust to Wells Fargo.

To the extent Plaintiffs have other claims for fraud, they seem to be unavailing as well. For example, Plaintiffs seem to suggest that the provision on MERS was not a part of the deed of trust

8

1  Mr. Miller signed – *i.e.*, the provision was included only in the "altered" deed of trust that was
2  recorded. *See also* Docket No. 62 ("Sur-Reply" at 3) (claiming that "Deed of Trust (DOT) recorded
3  on March 12, 2006 is forged to include the inclusion of paragraphs pertaining to MERS, which the
4  plaintiff would not have signed had these ambiguous and confusing terms been in the original
5  DOT"). But this claim is lacking in plausibility. The recorded deed of trust has Mr. Miller's signed
6  initials on each page. The provision on MERS is on the second page of the recorded deed of trust
7  and does not on its face seem to have been inserted into the document post-signing.

8  As another example, Plaintiffs appear to argue that Carrington engaged in fraud by refusing
9  to identify who the owner of the loan was. But that cannot be a misrepresentation because Plaintiffs
10 *knew* that Carrington was not disclosing the name of the loan holder.

11 Accordingly, the Court shall grant the motion to dismiss the fraud claim. Because a claim
12 for negligent misrepresentation also requires reliance on the part of the plaintiff, *see Cadlo v.
13 Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004) (noting that "[t]he same elements comprise a
14 cause of action for negligent misrepresentation, except there is no requirement of intent to induce
15 reliance," *i.e.*, intent to defraud), the Court shall grant the motion to dismiss the negligent
16 misrepresentation claim as well.

17 The only question remaining is whether the dismissal of the fraud and negligent
18 misrepresentation claims should be with or without prejudice. Because the Court cannot say at this
19 juncture that either claim would be impossible or futile (as discussed below, it is possible that
20 Defendants do not own the promissory note and/or deed of trust), the dismissal shall be without
21 prejudice. The Court, however, shall not grant Plaintiffs leave to amend at this time. If, during
22 discovery, Plaintiffs come upon additional facts suggesting that there was fraud or a negligent
23 misrepresentation of some kind, then they may ask the Court for leave to amend their complaint and
24 add such a claim or claims.

25 D.   Declaratory Relief and Quiet Title

26 To the extent these claims are predicated on fraud or a misrepresentation, they shall be
27 dismissed for the reasons discussed above. However, the Court shall liberally construe these claims
28 as being, in essence, a claim for wrongful foreclosure without any fraudulent intent. The wrongful

foreclosure claim is predicated on Defendants' lack of ownership of the promissory note and/or deed of trust.

As the Court discussed in its preliminary injunction order, the critical document in the chain of ownership is the assignment of the deed of trust, which appears to have been backdated so that Fremont (acting through MERS) would seem to be making the assignment to Wells Fargo. Defendants argue that, even if Fremont did not actually exist at the time of the assignment, Signature did exist and Signature automatically acquired the promissory note and/or deed of trust by virtue of the alleged merger of the two companies. *See* Mot. at 6 (noting that, in ¶ 38(d) of the FAC, Plaintiffs alleged that Signature "acquired Fremont as a merger" and that, under California Corporations Code § 1107(a), "[u]pon merger pursuant to this chapter the separate existence of the disappearing corporations ceases and the surviving corporation shall succeed, without other transfer, to all the rights and property of each of the disappearing corporations and shall be subject to all the debts and liabilities of each in the same manner as if the surviving corporation had itself incurred them"); *see also* Docket No. 62-1 (bankruptcy court order) (reflecting that Fremont was merged into the reorganized debtor. Defendants suggest that MERS should be deemed to have been acting on Signature's behalf when it made the assignment to Wells Fargo.

Defendants' position is problematic because Defendants assume that the promissory note and deed of trust at issue were assets that Fremont had when it merged with Signature. But the Court has no information establishing that this was in fact the case. Indeed, Plaintiffs' FAC suggests that the assets may have been transferred by Fremont prior to merger (whether before or during bankruptcy) because both Citibank and BAC have also claimed ownership of the loan. *See* FAC ¶ 113.

Accordingly, the Court dismisses the claims for declaratory relief and quiet title only to the extent they are based on fraud. The claims shall otherwise be allowed to proceed – *i.e.*, so that Plaintiffs can maintain, in essence, a claim for wrongful foreclosure. To the extent Defendants suggest these claims should still be dismissed because Plaintiffs have failed to allege prejudice as a result of the defects in the assignment, *see* Mot. at 8, the Court rejects that argument. Even if Plaintiffs are in default (in their opposition and in their "sur-reply", Plaintiffs suggest that they are

able to pay, *see, e.g.*, Docket No. 61 ("Sur-Reply" at 10) (stating that, "if a true lender can be found[,] the plaintiffs do offer to pay him")), that does not mean that anyone should be allowed to foreclose on their property regardless of their standing to do so. For similar reasons, the Court rejects any argument by Defendants that the quiet title claim should be dismissed absent an allegation of tender by Plaintiffs. *See* Mot. at 9-10. That is, Plaintiffs should not have to tender any money to Defendants if they in fact are not the true owners of the loan. *See Frazier v. Aegis Wholesale Corp.*, No. C-11-4850 EMC, 2011 U.S. Dist. LEXIS 145210, at *7-8, 27 (N.D. Cal. Dec. 16, 2011) (stating that, "[i]f Plaintiffs are correct in arguing that none of the defendants own the loan, then Plaintiffs should have no obligation to tender any money at all to any defendant," including for the quiet title claim).

E. <u>Violation of RESPA</u>

As noted above, the RESPA claim seems to be predicated on Plaintiffs asking Carrington for proof of ownership and Carrington's failure to provide adequate evidence of such. According to Plaintiffs, Carrington first offered as proof of ownership an assignment of deed of trust that was "unsigned, undated, and had a blank where the trustee should have been identified." FAC ¶ 41. Carrington subsequently offered as proof of ownership another assignment of deed of trust, which was problematic for several reasons: (1) it was not executed by Fremont but rather by Carrington; (2) "[t]he trustee name was still left blank"; (3) the document was still undated; and (4) "the notarization section was not notarized." FAC ¶ 43. Ultimately, the assignment document that was recorded was a completely different document – *i.e.*, the document that was backdated to make it seem that Fremont (acting through MERS) was making the assignment to Wells Fargo.

Under the circumstances, the relevant provision of RESPA appears to be 21 U.S.C. § 2605(e). That statute provides as follows:

> (e) Duty of loan servicer to respond to borrower inquiries.
>
>   (1) Notice of receipt of inquiry.
>
>     (A) In general. If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response

11

>acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

12 U.S.C. §¤ 2605(e)(1)(A).

The problem for Plaintiffs is that, as indicated above, § 2605(e) requires that a borrower make a request "for information relating to the *servicing* of [the] loan." *Id.* (emphasis added). Servicing is defined in the statute as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower." *Id.* § 2605(i)(3). In the case at bar, Plaintiffs did not make a request for information related to servicing; rather, they made a request for information related to ownership. As this Court recently held, a request related to ownership of a loan or validity of a loan is not covered by RESPA. *See Tamburri v. Suntrust Mortg., Inc.*, No. C-11-2899 EMC, 2012 U.S. Dist. LEXIS 86360, at *10 (N.D. Cal. June 21, 2012) (stating that, "[a]ny damages . . . purportedly resulting from Plaintiff's lack of knowledge as to the owner of her loan are not plausibly related to her RESPA claim, because § 2605 relates only to the servicing of a loan, not to its ownership or validity"); *cf. Consumer Solutions Reo, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1014 (N.D. Cal. 2009) (noting that, "[u]nder § 2605(e), a loan servicer has an obligation to act when it receives a QWR from the borrower or borrower's agent 'for information relating to the servicing of [the] loan'"; plaintiff's letter "simply disputed the validity of the loan and not its servicing (*e.g.*, not whether Saxon had failed to credit her for payments she made pursuant to the loan)").

Accordingly, the Court dismisses Plaintiffs' RESPA claim with prejudice.

F.  <u>Defamation</u>

As noted above, it is not clear whether the defamation claim is asserted against Carrington only or against all Defendants. In any event, Plaintiffs claim that, at the very least, Carrington "knowingly, intentionally and without justification communicated false information to the credit reporting bureaus." FAC ¶ 191.

Under California law, "[t]he elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1369 (2010). As Defendants argue, Plaintiffs' defamation claim should be dismissed if only because Plaintiffs have not specified what false information was communicated to the credit agencies. The Court therefore shall dismiss the defamation claim but shall give Plaintiffs leave to amend. In the amendment, Plaintiffs should, *inter alia*, clarify which Defendants are being sued with respect to this claim.

G.   IIED

Finally, Plaintiffs bring a claim for IIED based on Defendants' repeatedly threatening them with eviction from their home and demanding that they pay money. This claim is dependent on Defendants' knowing that they have no ownership interest in the Plaintiffs' loan. As discussed above in the section on fraud, Plaintiffs have not alleged enough to establish knowledge of falsity. Therefore, the IIED claim shall be dismissed. The dismissal shall be without prejudice, consistent with the fraud claim.

H.   Summary

For the foregoing reasons, the Court rules as follows on Defendants' motion to dismiss:

(1)   The claims for temporary injunction, financial damages, and civil conspiracy are dismissed with prejudice. None of these is a cognizable cause of action.

(2)   The fraud claim and the related negligent misrepresentation claim are dismissed without prejudice. Plaintiffs do not at this juncture have leave to amend. They are not barred, however, from asking for leave to amend should discovery reveal a factual basis for such claims.

(3)   The declaratory relief and quiet title claims are dismissed only to the extent that they are predicated on an alleged fraud by Defendants. The claims, however, survive to the extent Plaintiffs basically claim a wrongful foreclosure by Defendants on the grounds that they do now own the promissory note/deed of trust at issue.

(4)   The RESPA claim is dismissed with prejudice.

(5)   The defamation claim is dismissed with leave to amend.

(6)   The IIED claim is dismissed without prejudice. As above, Plaintiffs are not barred

1 from asking for leave to amend should discovery reveal a basis for a fraud or negligent
2 misrepresentation.

3   Consistent with the above, the Court orders that Plaintiffs file an amended complaint within
4 thirty days from the date of this order. Plaintiffs' amended complaint shall *not* include any claims
5 that the Court has dismissed in this order, except for the claim for defamation which the Court is
6 allowing Plaintiff to now replead. At this juncture in the proceedings, the defamation claim is the
7 *sole* claim that the Court is allowing Plaintiffs to replead currently. In light of the Court's rulings
8 above, Plaintiffs' motion for leave to file an amended complaint, *see* Docket No. 65 (motion), is
9 moot.

## IV.   PLAINTIFFS' MOTION FOR SANCTIONS

11   In their motion for sanctions, Plaintiffs ask the Court to sanction Defendants because they
12 filed false claims with the bankruptcy courts.

13   The motion – to the extent it is brought under Federal Rule of Civil Procedure 11 – is denied
14 because, as Defendants point out, Plaintiffs failed to comply with the safe harbor provision of Rule
15 11. *See* Fed. R. Civ. P. 11(c)(2) (providing that "[t]he motion must be served under Rule 5, but it
16 must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or
17 denial is withdrawn or appropriately corrected within 21 days after service or within another time
18 the court sets").

19   More important, because no court, including this one, has determined whether or not
20 Defendants do have an ownership interest in the promissory note/deed of trust at issue, Plaintiffs'
21 motion is premature.

22   Finally, the Court notes that 18 U.S.C. §§ 152 and 3571 are criminal statutes, *see* 18 U.S.C. §
23 152(4) (providing for a fine or imprisonment for a person who "knowingly and fraudulently presents
24 any false claim for proof against the estate of a debtor, or uses any such claim in any case under title
25 11 [bankruptcy], in a personal capacity or as or through an agent, proxy, or attorney"); *id.* § 3571
26 (covering the sentence of a fine), and most courts seem to agree that there is no private right of
27 action for a violation of § 152. *See, e.g.*, *Truong v. Litman*, 312 Fed. Appx. 377, 378 (2d Cir. 2009)
28 ("find[ing] no ground for disturbing the district court's holding that the Truongs have not made the

difficult case for implying a private right of action under 18 U.S.C. Section 152, a criminal statute"); *Heavrin v. Boeing Capital Corp.*, 246 F. Supp. 2d 728, 731 (W.D. Ky. 2003) (stating that "there is no private cause of action under 18 U.S.C. § 152(4) for filing a false proof of claim in a bankruptcy proceeding"; following the reasoning of a North Carolina bankruptcy court).

Accordingly, Plaintiffs' motion is denied.

## V. CONCLUSION

For the foregoing reasons, the Court rules as follows:

(1) Plaintiffs' "motion to extend time" (Docket No. 63) is granted to the extent the Court shall consider the arguments contained in the untimely opposition/sur-reply.

(2) Defendants' motion to dismiss (Docket No. 42) is granted in part and denied in part. Plaintiffs have thirty days from the date of this order to file an amended complaint.

(3) In light of the Court's ruling on Defendants' motion to dismiss, Plaintiffs' motion for leave to file an amended complaint (Docket No. 65) is moot. The briefing schedule and hearing date on the motion for leave to amend are thereby vacated.

(4) Plaintiffs' motion for sanctions (Docket No. 49) is denied.

IT IS SO ORDERED.

Dated: August 14, 2012

_____
EDWARD M. CHEN
United States District Judge