UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD BROOKS MILLER, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>CARRINGTON MORTGAGE SERVICES, *et al.*,<br><br>　　　　　Defendants.<br>_____/ | No. C-12-2282 EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANTS' MOTION TO STRIKE; AND DENYING PLAINTIFF'S MOTION TO RECONSIDER**<br><br>**(Docket Nos. 141, 157, 171)** |

　　　　Ronald B. Miller has moved for summary judgment on his claim for wrongful foreclosure.[1] Based on a recent filing by Mr. Miller, it appears that Mr. Miller is not asking the Court to make a ruling, as part of his claim for wrongful foreclosure, that Defendants lack an ownership interest in the underlying real property at issue. *See* Docket No. 170 (Opp'n at 3) (stating that "the motion as submitted specifically excluded the question of ownership of the Loan in order to separate the causes of action for Wrongful Foreclosure from the Quiet Title cause of action which is depend[e]nt upon the question of Ownership of the loan" and that "[o]wnership of the loan is properly considered

---

[1] The Court has previously held that Usoalii Nikotemo Miller, Mr. Miller's wife, is not a proper plaintiff. *See* Docket No. 108 (Order at 2) (stating that "Mrs. Miller is improperly named as a plaintiff"); Docket No. 151 (Order at 1) (stating that "Mrs. Miller is not a proper plaintiff"). Based, *inter alia*, on these prior rulings, Defendants have moved to strike Mrs. Miller as a plaintiff from the operative complaint. *See* Docket No. 157 (motion). Mr. Miller has opposed the motion. The motion is **GRANTED** but without prejudice to Mr. Miller such that he may, if he wishes, seek reconsideration of the Court's prior rulings.

separately and likely at trial"). Therefore, Mr. Miller's contention seems simply to be that there are deficiencies with the foreclosure-related documents which render the attempted foreclosure void.

Having considered the parties' briefs and accompanying submissions, as well as all other evidence of record, the Court hereby **GRANTS** Mr. Miller's motion.

## I. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The rule also provides that "[a] party asserting that a fact cannot be or is not genuinely disputed must support the assertion by [*e.g.*] citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255.

In their papers, Defendants argue that, because Mr. Miller has the ultimate burden of proof on the wrongful foreclosure claim, he may prevail on his motion for summary judgment only if he affirmatively demonstrates that there is no genuine dispute as to every essential element of his claim. *See River City Mkts., Inc. v. Fleming Foods W., Inc.*, 960 F.2d 1458, 1462 (9th Cir. 1992). There are serious questions as to whether Defendants are right that Mr. Miller bears the ultimate burden of proof on the wrongful foreclosure claim. Although a California appellate court has stated that "a nonjudicial foreclosure sale is presumed to have been conducted regularly, and the burden of proof rests with the party attempting to rebut this presumption," *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 270 (2011), the fact is that, in the instant case, no foreclosure sale has actually

2

1   taken place. Therefore, arguably, Defendants, as the parties "asserting a right under an assigned
2   instrument[,] bear[] the burden of demonstrating the assignment." *Id.*

3   For purposes of this opinion, however, the Court assumes that Mr. Miller has the burden of
4   proof. Nonetheless, even if Mr. Miller has the burden of proof, he has, for the reasons discussed
5   below, established a prima facie case. Defendants have failed to adequately rebut that prima facie
6   case. Accordingly, Mr. Miller is entitled to summary judgment.

7   B.      Rule 56(d) Request

8   In opposing Mr. Miller's motion for summary judgment, Defendants argued in part that the
9   motion was premature because they had not been given an opportunity to conduct necessary
10  discovery. Because Defendants made only a cursory request for discovery pursuant to Federal Rule
11  of Civil Procedure 56(d) (requiring a nonmovant to show by affidavit or declaration that, "for
12  specified reasons, it cannot present facts essential to justify its opposition"), the Court gave
13  Defendants the opportunity to provide supplemental briefing describing with specificity what
14  discovery was needed with respect to the wrongful foreclosure claim. *See* Docket No. 1598 (Order
15  at 3).

16  Defendants filed their supplemental brief as ordered. Having reviewed that brief, the Court
17  concludes that Defendants have failed to make an adequate showing that discovery is necessary
18  before the Court may fairly rule on Mr. Miller's motion.

19  For example, Defendants suggest that the need to take discovery related to certain assertions
20  made by Mr. Miler, but the critical assertion made by Mr. Miller is that the foreclosure documents
21  are problematic on their face, and Defendants have failed to explain what discovery they need to
22  take with regard to the apparent deficiencies with their documentation of the chain of title.

23  Defendants also argue that they need to take discovery to determine whether a procedural
24  irregularity occurred, but this misses the point. Mr. Miller has not argued that the foreclosure sale
25  was completed and that there was a procedural irregularity that took place in conjunction with that
26  sale. *See 6 Angels, Inc. v. Stuart-Wright Mortgage, Inc.*, 85 Cal. App. 4th 1279, 1284 (2001)
27  (stating that "there is a common law rebuttable presumption that a foreclosure sale has been
28  conducted regularly and fairly," and so "[a] successful challenge to the sale requires evidence of a

failure to comply with the procedural requirements for the foreclosure sale that caused prejudice to the person attacking the sale") (internal quotation marks omitted).

Defendants' contention that they need to take discovery related to Mr. Miller's ability to tender the loan proceeds also misses the point. Tender would not be required if Defendants did not own the loan in the first place. *See, e.g.*, *Frazier v. Aegis Wholesale Corp.*, No. C-11-4850 EMC, 2011 U.S. Dist. LEXIS 145210, at *7-8 (N.D. Cal. Dec. 16, 2011) (rejecting defendant's argument that complaint should be dismissed because plaintiffs failed to tender the outstanding debt owed because "the majority of Plaintiffs' claims are predicated on their contention that none of the defendants . . . owns the loan and therefore none has the authority to foreclose[;] [i]f Plaintiffs are correct in arguing that none of the defendants own the loan, then Plaintiffs should have no obligation to tender any money at all to any defendant"). Although at this point Mr. Miller is not asking for a determination of ownership, it is clear that he is challenging Defendants' asserted ownership as part of, *e.g.*, his quiet title claim.

Finally, Defendants claim that they need to take discovery related to Mr. Miller's damages but the primary relief sought by Mr. Miller in his operative complaint on the wrongful foreclosure claim is nonmonetary damages. *See* 4AC ¶ 184 (asking largely for declaratatory relief). And even if Mr. Miller was seeking monetary damages, that still would not prevent the Court from granting summary adjudication on the issue of liability.

The Court, therefore, denies Defendants' Rule 56(d) request.

C. <u>Foreclosure Documents</u>

In his motion for summary judgment, Mr. Miller challenges various foreclosure-related documents but the critical document is the assignment of deed of trust, which was recorded in the Alameda County Recorder's Office on June 1, 2011. *See* Docket No. 16 (Defs.' RJN, Ex. 5) (assignment of deed of trust). This document is the basis for the challenged notice of default, substitution of trustee, and notice of trustee's sale.[2]

---

[2] In his motion, Mr. Miller also challenges a notice of rescission, but that document is essentially immaterial as Defendants did not seek to foreclose on that notice or on the underlying notice of default that was subject to rescission.

4

As to the assignment document, Mr. Miller makes several arguments but the pivotal argument is that, based on the face of the document, the assignment was improper because the assignment – made from Fremont to Wells Fargo – was signed on February 25, 2010,[3] *i.e.*, at a time when Fremont was still in bankruptcy, and there is no evidence that the bankruptcy court approved the assignment.

In their papers, Defendants do not dispute that, as of February 25, 2010, Fremont was in fact in bankruptcy proceedings.[4] Furthermore, Defendants do not make any contention that an assignment – if made on February 25, 2010 – would need to be authorized by the bankruptcy court. Thus, Mr. Miller has made out a prima facie case (assuming that he bears the burden of proof) that his loan was transferred while Fremont was in bankruptcy, and the burden now shifts to Defendants.

Here, Defendants have staked out the position that although the assignment document was signed on February 25, 2010, the actual assignment took place years earlier, more specifically, in 2006 which was prior to the Fremont bankruptcy. This assertion is central to Defendants' position in this matter. The problem for Defendants is that its evidence submitted in support is flawed, for the reasons discussed in the Court's order of June 11, 2013. For example, to the extent Defendants rely on the Mortgage Loan Purchase Agreement, dated June 28, 2006, they did not submit a copy of any Closing Schedule which would identify *which* loans (including the instant loan) were transferred. *See* Docket No. 159 (Order at 2) (noting that "no Closing Schedule appears to have been given to the Court so that it may determine whether Mr. Miller's loan is one of the loans"). As for the Pooling and Service Agreement, dated June 1, 2006, Defendants submitted only a draft agreement, not a final agreement; moreover, even the draft did not identify *which* loans had been transferred to the trust. *See* Docket No. 159 (Order at 2).

---

[3] Mr. Miller questions whether the assignment was actually signed on February 25, 2010, given that the date the document was notarized was May 20, 2011. *See* Docket No. 16 (Defs.' RJN, Ex. 5) (assignment of deed of trust).

[4] The parties seem to agree that, on June 18, 2008, Fremont (or at least its parent) filed for bankruptcy. *See* 4AC ¶ 57; *see also* Docket No. 129 (Defs.' Supp. St. at 3). Mr. Miller has also previously provided evidence showing that Fremont (or at least its parent) was still in bankruptcy in or about June 2010. *See* Docket No. 62-1 (bankruptcy court order).

The Court acknowledges that, as part of a supplemental brief, Defendants for the first time provided a declaration from Tom Croft of Carrington. *See* Docket No. 167 (Croft Decl.). In that declaration, Mr. Croft makes affirmative statements (without providing any supporting documentation) that (1) Mr. Miller's loan specifically was transferred in June 2006 from Fremont to Wells Fargo (through securitization) and that (2) Wells Fargo received the endorsed promissory note from Fremont in June 2006. *See* Docket No. 167 (Croft Decl. ¶¶ 3, 5). But Defendants cannot use the belatedly filed Croft declaration to cure the deficiencies in its opposition to the motion for summary judgment. Defendants could have submitted the Croft declaration as a part of their opposition but did not. Moreover, it is improper for Defendants to submit the Croft declaration now given that the Court's order on supplemental briefing asked them to provide additional information as to their Rule 56(d) request only. The Court did not invite or permit post-briefing argument of the evidence. This was not an open invitation to Defendants to supplement the record.

Moreover, the Court notes that it previously invited Defendants to proffer evidence regarding the transfer of the deed of trust and note at issue, particularly in relation to the bankruptcy filing of Fremont. *See* Docket No. 108 (order). Initially, Defendants failed to provide any relevant evidence, simply submitting an agreement regarding the transfer of servicing rights. *See* Docket No. 119 (Defs'. Supp. St., Ex. 3). After Defendants acknowledged this problem at a case management conference, the Court gave Defendants yet another opportunity to make an offer of proof. All that Defendants provided were the two agreements discussed above. *See* Docket No. 129 (Defs.' Further Supp. St.). And Defendants had yet another opportunity to present evidence in opposing Plaintiff's motion for summary judgment. Notwithstanding multiple opportunities, Defendants have failed to proffer evidence that the deed of trust and note at issue were transferred prior to the Fremont bankruptcy.

## II. CONCLUSION

For the foregoing reasons, the Court grants Mr. Miller's motion. The Court underscores that its ruling here is limited in nature. That is, based on the record submitted, the Court concludes that there is no genuine dispute that the loan at issue was transferred by Fremont while it was in bankruptcy (as Mr. Miller contends) and not before (as Defendants contend). The Court's ruling

here does not address whether Defendants have an ownership interest in the loan (as Mr. Miller has expressly disavowed that he is seeking any ruling on ownership as part of his wrongful foreclosure claim). The Court's ruling here also does not address whether Defendants can cure any deficiency in transfer.

Because the Court is granting the motion for summary judgment, Mr. Miller's recently filed motion to reconsider, *see* Docket No. 171 (motion), is moot. The motion is also premature because, at the time that Mr. Miller filed the motion, this Court had yet to make any ruling on his motion for summary judgment.

This order disposes of Docket Nos. 141, 157, and 171.

IT IS SO ORDERED.

Dated: July 3, 2013

_____
EDWARD M. CHEN
United States District Judge

7